**IN THE COURT OF APPEALS OF IOWA**

No. 22-0294
Filed August 17, 2022

**IN THE INTEREST OF R.S.-W.,**
**Minor Child,**

**J.S.-W., Father,**
    Appellant,

**J.S.-W., Mother,**
    Appellant
_____

Appeal from the Iowa District Court for Emmet County, Ann M. Gales, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Elizabeth K. Elsten, Spirit Lake, for appellant father.

Jennifer Bennett Finn of Pelzer Law Firm, LLC, Estherville, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shannon Sandy, Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor, and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

Parents of a child born in 2015 separately appeal the termination of their parental rights. Both parents (1) challenge the evidence supporting the ground for termination cited by the district court; (2) argue the department of human services failed to make reasonable reunification efforts; (3) argue termination was not in the child's best interests; (4) contend the district court should have declined to terminate parental rights based on their bond with the child; and (5) assert the district court should have considered placement of the child with "fictive kin." The mother also argues the department (6) "inappropriately delegated its discretion in visitation to the child's therapist." The father asserts (7) he should have been afforded six additional months to reunify with the child.

## I. Ground for Termination

The department was involved with the family for approximately four years preceding this matter, based on the poor condition of the family's home. The department afforded the parents a variety of services to address the issue. In the spring of 2020, the child was in parental care, and the State dismissed a pending child-in-need-of-assistance (CINA) action

The same summer, a department caseworker again found the parents' home "to be in deplorable condition." The parents agreed to have the child placed in foster care. The State filed a CINA petition based on "prior founded abuse reports . . . for conditions in the home," "a founded report of domestic violence in

the home," and the present home conditions. The parents consented to the child's adjudication as a child in need of assistance. The child remained in foster care.[1]

The following year, the district court granted the State's petition to terminate parental rights pursuant to Iowa Code section 232.116(1)(f) (2021), which requires proof of several elements, including proof the child cannot be returned to parental custody. The court agreed with the caseworker that, "[I]f [the child] were returned to her parents' custody, there would be a 'very high likelihood' of another removal within a short time frame." Both parents take issue with the court's conclusion.

The caseworker on whose testimony the court relied stated the child was out of the parents' home "approximately twenty-five months" over the previous five years. She opined the child could not be returned to the parental home because the parents failed to make "progress to ensure a safe home environment." Her testimony aligned with a department report stating the parents were not "able to sustain the skills necessary to keep the home environment safe for" the child. A service provider who supervised visits seconded that opinion. Although she noted that the mother addressed concerns with clutter that was "stacked up way too high," she cited ongoing problems with smells in the home and the child's access to medication. She opined, "I do not believe the home will be maintained in a safe

---

[1] The parents suggest the State used prior proceedings to prove termination. The supreme court recently held an adjudication in a prior closed case could not establish the adjudication requirement in the present case. *See In re L.B.*, 970 N.W.2d 311, 314 (Iowa 2022) ("In short, we conclude the juvenile court erred when it utilized CINA 1 in an attempt to meet the statutory requirements of Iowa Code section 232.116(1)(f) and (g) in CINA 2."). That is not what happened here. The court adjudicated the child in this proceeding.

condition" and the child cannot "safely return home." On our de novo review, we agree the State proved the elements of Iowa Code section 232.116(1)(f).

**II.     *Reasonable Efforts***

The department has an obligation to make reasonable reunification efforts. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The mother asserts that the State filed a motion to waive the reasonable-efforts requirement and declined to provide services while the motion was pending. The father argues he was "wrongfully deprived of visitation services." We disagree on both counts.

The district court held a two-day hearing on the State's motion. At the conclusion of the hearing, the court stated "the department's obligation to make reasonable efforts . . . continues until such time, if ever, as the court waives it or until there's an order terminating parental rights, which is not even on the table yet here." Later, the court reiterated that identified services "should continue to be provided," and the court instructed the caseworker not to "hold back on working towards reunification because of any expectation of how" the court would rule. The court's statements together with progress notes indicating the department continued to provide services after the motion was filed contradict the mother's claim.

As for the father's assertion that visitation services were improperly denied, the same progress notes indicate weekly visits were afforded. Although the service provider who supervised the visits testified that the frequency changed over time and visits stopped and started a couple of times, she stated the department adopted a once-per-week, two-hour schedule after she expressed concerns "about the ups and downs and ins and outs of changing visitation times and schedules so much

for this little girl." Notably, the department facilitated semi-supervised visits and two overnight visits in addition to the supervised visits. The department reverted to supervised visits only after the child's therapist recommended the change. On our de novo review, we conclude the department satisfied its reasonable-efforts mandate.

### III.    Best Interests

Termination must be in the child's best interests. Iowa Code § 232.116(2). The district court concluded the requirement was satisfied. On our de novo review, we agree.

The caseworker opined that the child had "been through a lot." She further stated the parents had "been given every chance and every opportunity to engage in services that could have helped them, and" she did not "think they utilized it to the full extent that they could have." True, the child was no longer at an age where the clutter and dirt in the home posed the same safety threat as it did in infancy. But the parents' ongoing struggle to maintain a clean home environment made the prospect of another removal more likely. The child's therapist testified that "would be very detrimental." She discussed the child's diagnosis of reactive attachment disorder brought about by "her age and the number of removals" and opined it would not be "in her best interest to go back home." Like the district court, we conclude termination was in the child's best interests.

### IV.    Parent-Child Bond

Both parents argue the district court should not have terminated their parental rights in light of the parent-child bond. *Id.* § 232.116(3)(c). The district court acknowledged that the parents "passionately love[d]" the child and the child

similarly "love[d] her parents," "ha[d] a bond with them," and would "experience distress from not being able to regularly see" them. But the court concluded the parents were unable to meet the child's need for permanency and that need overrode any harm she would experience.

The record supports the court's conclusion. While some of the turbulence in the child's life resulted from her placement in multiple foster homes, those transfers would have been unnecessary had the parents made greater progress with reunification goals. The court appropriately refused to grant an exception to termination based on the parent-child bond.

## V.    *Placement with "Fictive Kin"*

The parents assert the child should have been placed with a friend of the mother, whom they characterize as "fictive kin." The child welfare statute in effect at the time of this proceeding did not use the term "fictive kin." The statute authorized placement of a child with a "suitable person." *See id.* § 232.117(3)(c); *In re J.C.*, 857 N.W.2d 495, 508 (Iowa 2014) ("The term 'suitable person' is not defined by our legislature. Instead, it is a flexible term which provides the [juvenile] court with discretion to determine the 'suitable person' status based on the particular facts of each petition for intervention." (alteration in original) (citation omitted)). The "suitable person" language did not grant relatives a placement preference or foreclose non-relatives from being considered as a placement option. *See In re K.D.*, 975 N.W.2d 310, 325 (Iowa 2022) (noting "our current statute does not mandate a preference for relative placement after the termination of parental rights" and stating the federal Family First Prevention Services Act "prioritizes the placement of children removed from their parents in this order:

relative or fictive kin, licensed foster family, congregate care" (citing Bipartisan Budget Act of 2018, Pub. L. No. 115–123, §§ 50701–50782, 132 Stat. 64, 232–68)); *In re T.F.-M.*, No. 19-0153, 2019 WL 2524102, at *3 (Iowa Ct. App. June 19, 2019) (stating "to the extent [the placement option] was a 'suitable person' under section 232.117(3)(c), she had a legal right to be considered as guardian or custodian of the child following the termination of the parental rights, even if she was not a blood relative"). Nor did the language require an ongoing relationship between the person and the child, although such a relationship could serve as a factor supporting a finding that the person was a "suitable person." *See J.C.*, 857 N.W.2d at 508.

All that changed on July 1, 2022. *See* 2022 Iowa Acts ch. 1098. Under the recently enacted legislation, Iowa Code chapter 232 now affords "a preference for placement with the child's family or a fictive kin." *Id.* § 1 (to be codified at Iowa Code § 232.1). The legislation defines "fictive kin" as "an adult person who is not a relative of a child but who has an emotionally positive significant relationship with the child or the child's family." *Id.* § 4 (to be codified at Iowa Code § 232.2(20A)). After removal, adult relatives and "fictive kin" are given priority over foster care placements. *Id.* § 39 (to be codified at Iowa Code § 232.95(2)(c)). And the legislation amends section 232.117(3)(c) to use the term "fictive kin" rather than "suitable person." *Id.* § 60 (to be codified at Iowa Code § 232.117(3)(c)). Had this legislation taken effect earlier and applied to the parents' termination proceeding, the parents might have claimed a statutory preference for the mother's friend, who was characterized as an adopted sister, and the State might have pointed to the statutory definition requiring an emotional relationship. But under the "suitable

person" definition then in effect, neither argument could carry the day. *See* Iowa Code § 232.117(3)(c).

Ultimately, the court found that the establishment of a pre-termination guardianship under Iowa Code section 232.117(3)(c) was "not a realistic option" because "[t]oo little [was] known about [the placement option] and her home." The court did not explicitly determine whether the friend was "a suitable person."

The record contains abundant evidence that the friend was a suitable person for consideration as a placement option. She testified to a strong relationship with the child's mother that began when she was six and the mother was nine, and she described staying with the mother's family for up to one month at a time. She maintained that close bond with the family into adulthood. Notably, she spoke to the mother "[m]ultiple times a week" before and during the CINA proceedings.

After the present CINA case was opened, the mother advised the department the friend could serve as a viable placement option. According to the friend, the mother was told the department would consider "blood relation[s] first and only." The child and her parents previously lived with the maternal grandparents. They passed away. The department later expressed an intent to have a guardianship created with the out-of-state paternal grandparents. Ultimately, that option did not pan out. The friend stepped in and told the mother, "Well, I'm here. I've always been here. Let me know what I can do to help." The department changed its position on the viability of a guardianship, opting to pursue termination of parental rights.

According to the caseworker, the reason for the change was that "a guardianship [was] not going to resolve conflict or interference by the parents." The friend, who was aware of that stance, advised the court at the termination hearing that she was "here for the long haul, step-in, sort of replacement option, whether that's guardianship or adoption." She said she wanted "to be there for [the child] and provide a family tie." Significantly, the mother's sister supported placement of the child in a guardianship with the friend. She testified, "I absolutely think she would do a wonderful job."

While the friend may have been a suitable person for placement purposes, the district court's decision to deny the request for a pre-termination guardianship was consistent with the oft-cited principle "that a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted). In this case, the limited progress of the parents over a period of several years militated in favor of termination.[2]

## VI.    *Delegation of Visitation Discretion*

The mother contends the department "inappropriately delegated its discretion on visitation to the child's therapist." *Cf. In re Marriage of Stephens*, 810 N.W.2d 523, 530 (Iowa Ct. App. 2012) (stating the "obligation to modify a decree cannot be delegated to any person or entity because that person or entity has no jurisdiction to render such a decision"); *In re S.P.*, No. 16-1919, 2017 WL 108798, at *5 (Iowa Ct. App. Jan. 11, 2017) ("The juvenile court may not delegate its judicial

---

[2] The district court recognized the friend might serve as a viable adoption option and encouraged the completion of the home-study process the department began shortly before the termination hearing.

function to any third party, including the children adjudicated in need of assistance.").

The district court left the number of visits that would be afforded the parents in the department's discretion. The department in turn relied on the therapist's opinions about visitation in formulating a visitation schedule. Indeed, the caseworker agreed she deferred to the therapist's recommendations. She explained, "I feel like I am not a mental health professional by trade, so I don't work with, and I don't see [the child] on a daily basis, and I'm not educated enough to make that determination on whether or not visitation would be detrimental to her mental health." At the same time, the caseworker denied delegating the visitation decision to the therapist.

We are troubled by the therapist's assertions that she had the final say on whether visits should take place. That said, the department did not allow the therapist to exercise exclusive control. The department considered the therapist's opinions but also credited the views of the service provider who supervised visits. We conclude neither the juvenile court nor the department improperly delegated the decision to the therapist.

## VII. Additional Time

The father contends the district court should have given him six additional months to work toward reunification. *See* Iowa Code § 232.104(2)(d). In light of the five years of reunification services the parents received, we agree with the district court's decision to terminate parental rights in lieu of granting additional time.

We affirm the termination of parental rights to the child.

**AFFIRMED ON BOTH APPEALS.**